**E-FILING**

**ADR**

SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP
Alan R. Plutzik, Of Counsel (Bar No. 077785)
L. Timothy Fisher, Of Counsel (Bar No. 191626)
Nichole Browning (Bar No. 251937)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
Telephone: (925) 945-0770
Facsimile: (925) 945-8792

-and-

Eric L. Zagar
James H. Miller
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
Attorneys for Plaintiff

*Filed*

FEB 26 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ARUNBHAI PATEL, Derivatively on Behalf of Nominal Defendant, VERIFONE HOLDINGS, INC., <br><br> Plaintiff, <br><br> v. <br><br> DOUGLAS G. BERGERON, JESSE ADAMS, ISAAC ANGEL, WILLIAM ATKINSON, CRAIG A. BONDY, JAMES C. CASTLE, LESLIE G. DENEND, ALEX W. HART, ROBERT B. HENSKE, CHARLES R. RINEHART, COLLIN E. ROCHE, ELMORE WALLER, and BARRY ZWARENSTEIN, <br><br> Defendants, <br><br> and <br><br> VERIFONE HOLDINGS, INC., <br><br> Nominal Defendant. | Case C08 01133 HRL <br><br> **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff, by the undersigned attorneys, submits this Verified Shareholder Derivative

Complaint (the "Complaint") against the defendants named herein.

**ORIGINAL**

## NATURE OF THE ACTION

1.    This is a shareholder derivative action brought for the benefit of nominal defendant VeriFone Holdings, Inc. ("VeriFone" or the "Company") against certain current and former .members of its Board of Directors (the "Board") and certain of its current and former executive officers seeking to remedy defendants' breaches of fiduciary duties and unjust enrichment.

2.    In contravention of their fiduciary duties, the defendants failed to ensure the effectiveness of the Company's internal controls. Despite these known failures, defendants caused the Company to disseminate to the public false and misleading statements that materially overstated VeriFone's financial results by failing to properly value inventory and cost of net revenue. In further violation of their fiduciary duties, certain defendants, based on their knowledge of material non-public information regarding the Company, sold 8,879,613 shares of VeriFone stock, garnering over *$332 million* in proceeds for their own personal benefit.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.   This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).   This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

4.    Venue is proper in this District because a substantial portion of the transactions and wrongs complained of herein, including the Defendants' primary participation in the wrongful acts detailed herein, occurred in this District.   One or more of the Defendants either resides in or maintains executive offices in this District, and Defendants have received substantial compensation in this District by engaging in numerous activities and conducting business here, which had an effect in this District.

## PARTIES

5.    Plaintiff Arunbhai Patel ("Plaintiff") is a shareholder of nominal defendant VeriFone, was a shareholder of VeriFone at the time of the wrongdoing alleged herein, and has

- 2 -

been a shareholder of VeriFone continuously since that time. Plaintiff is a citizen of the State of Ohio.

6.     Nominal defendant VeriFone is a corporation incorporated under the laws of the State of Delaware, and maintains its principal executive offices at 2099 Gateway Place Suite 600, San Jose, CA 95110. According to its public filings, VeriFone provides expertise, solutions, and services that add value to the point of sale with merchant-operated, consumer-facing, and self-service payment systems for the financial, retail, hospitality, petroleum, government, and healthcare vertical markets.

7.     Defendant Douglas G. Bergeron ("Bergeron") is, and was at all times relevant hereto, the Chief Executive Officer ("CEO") and Chairman of the Board ("Chairman") of VeriFone. Bergeron has served as the CEO and Chairman of VeriFone since July 2001. At times relevant hereto, Bergeron sold more than 1.4 million shares of VeriFone common stock for proceeds in excess of $56.5 million based upon the knowledge that the Company had materially overstated its inventory levels and materially understated its cost of net revenues, thereby materially overstating its net income. Notably, defendant Bergeron sold 43,300 shares of VeriFone common stock for proceeds in excess of $1.9 million on November 26, 2007, only 8 calendar days before the Company announced on December 3, 2007 that it would be restating its financial results for the first three fiscal quarters of fiscal 2007, and delaying the release of its financial results for the fiscal quarter ended October 31, 2007. Prior to assuming his roles as Chairman and CEO of VeriFone, Bergeron served as the President and CEO of Geac Computer Corporation ("Geac") from April 1999 to October 2000 alongside defendant Adams, who served as a division president and Senior Vice President of Geac from July 1999 through December 2000. Upon information and belief, Bergeron is a citizen of the State of California.

8.     Defendant Jesse Adams ("Adams") is, and was at all times relevant hereto, the Vice Chairman of the Board ("Vice Chairman") of VeriFone. Adams has served as the Vice Chairman of VeriFone since November 2006. Prior to serving as VeriFone's Vice Chairman, Adams served as the Company's Executive Vice President ("EVP") of North American Sales from July 2001 until October 2006. At times relevant hereto, Adams sold more than 129,000 shares of VeriFone stock

- 3 -

for proceeds in excess of $4.6 million based upon the knowledge that the Company had materially overstated its inventory levels and materially understated its cost of net revenues, thereby materially overstating its net income. Prior to beginning his service at VeriFone, Adams served as a division president and Senior Vice President of Geac from July 1999 through December 2000 alongside defendant Bergeron, who served as the President and CEO of Geac from April 1999 to October 2000. Upon information and belief, Adams is a citizen of the State of California.

9.      Defendant Isaac Angel ("Angel") is, and was at all times relevant hereto, VeriFone's EVP of Global Operations. Angel has served as the Company's EVP of Global Operations since November 2006. At times relevant hereto, Angel sold approximately 135,000 shares of VeriFone stock for proceeds of nearly $5.2 million based upon the knowledge that the Company had materially overstated its inventory levels and materially understated its cost of net revenues, thereby materially overstating its net income. Upon information and belief, Angel is a citizen of Israel.

10.     Defendant William Atkinson ("Atkinson") was at times relevant hereto VeriFone's EVP of Payment Systems. Atkinson served as the Company's EVP of Payment Systems from November 2006 to July 2007, and served the Company in other capacities prior to this position. At times relevant hereto, Atkinson sold approximately 117,000 shares of VeriFone stock for proceeds in excess of $4.4 million based upon the knowledge that the Company had materially overstated its inventory levels and materially understated its cost of net revenues, thereby materially overstating its net income. Upon information and belief, Atkinson is a citizen of the State of California.

11.     Defendant Craig A. Bondy ("Bondy") was at times relevant hereto a director of VeriFone. Bondy served as a director of VeriFone from July 2002 until his resignation on October 1, 2007. During the relevant period, defendants Bondy and Roche were affiliated with GTCR Golder Rauner, L.L.C. ("GTCR"). At times relevant hereto, Bondy, through GTCR, sold approximately 6.8 million shares of VeriFone stock for proceeds in excess of $251 million based upon the knowledge that the Company had materially overstated its inventory levels and materially understated its cost of net revenues, thereby materially overstating its net income. Upon information and belief, Bondy is a citizen of the State of Illinois.

- 4 -

12.     Defendant James C. Castle ("Castle") is, and was at all times relevant hereto, a director of VeriFone. Castle has served as a director of VeriFone since January 2005. At all times relevant hereto, Castle served as a member of the Audit Committee of the Board ("Audit Committee"). At times relevant hereto, Castle sold approximately 4,500 shares of VeriFone stock for proceeds in excess of $176,000 based upon the knowledge that the Company had materially overstated its inventory levels and materially understated its cost of net revenues, thereby materially overstating its net income. Upon information and belief, Castle is a citizen of the State of California.

13.     Defendant Leslie G. Denend ("Denend") is, and was at all times relevant hereto, a director of VeriFone. Denend has served as a director of VeriFone since January 2005. At all times relevant hereto, Denend served as a member of the Audit Committee and the Compensation Committee of the Board (the "Compensation Committee"). Upon information and belief, Denend is a citizen of the State of California.

14.     Defendant Alex W. Hart ("Hart") is, and was at all times relevant hereto, a director of VeriFone. Hart has served as a director of VeriFone since July 2006. Upon information and belief, Hart is a citizen of the State of California.

15.     Defendant Robert B. Henske ("Henske") is, and was at all times relevant hereto, a director of VeriFone. Henske has served as a director of VeriFone since January 2005. At all times relevant hereto, Henske has served as a member and chairman of the Audit Committee, and as a member of the Compensation Committee. Upon information and belief, Henske is a citizen of the State of California.

16.     Defendant Charles R. Rinehart ("Rinehart") is, and was at all times relevant hereto, a director of VeriFone. Rinehart has served as a director of VeriFone since May 2006. At all times relevant hereto, Rinehart has served as a member of the Audit Committee. Upon information and belief, Rinehart is a citizen of the State of California.

17.     Defendant Collin E. Roche ("Roche") is, and was at all times relevant hereto, a director of VeriFone. Roche has served as a director of VeriFone since July 2002. At all times relevant hereto, Roche has served as a member of the Compensation Committee. During the

- 5 -

relevant period, defendants Roche and Bondy were affiliated with GTCR. At times relevant hereto, Roche, through GTCR, sold approximately 6.8 million shares of VeriFone stock for proceeds in excess of $251 million based upon the knowledge that the Company had materially overstated its inventory levels and materially understated its cost of net revenues, thereby materially overstating its net income. Upon information and belief, Roche is a citizen of the State of Illinois.

18.    Defendant Elmore Waller ("Waller") is, and was at all times relevant hereto, VeriFone's EVP of Integrated Solutions. Waller has served as the Company's EVP of Integrated Solutions since December 2004. At times relevant hereto, Waller sold approximately 90,000 shares of VeriFone stock for proceeds in excess of $3.5 million based upon the knowledge that the Company had materially overstated its inventory levels and materially understated its cost of net revenues, thereby materially overstating its net income. Upon information and belief, Waller is a citizen of the State of Florida.

19.    Defendant Barry Zwarenstein ("Zwarenstein") is, and was at all times relevant hereto, VeriFone's EVP and Chief Financial Officer ("CFO"). Zwarenstein has served as the Company's CFO since June 2004, and as EVP since November 2006. Previously, Zwarenstein served the Company in various other capacities. At times relevant hereto, Zwarenstein sold more than 161,000 shares of VeriFone stock for proceeds in excess of $6.2 million based upon the knowledge that the Company had materially overstated its inventory levels and materially understated its cost of net revenues, thereby materially overstating its net income. Upon information and belief, Zwarenstein is a citizen of the State of California.

20.    Collectively, defendants Castle, Denend, Henske, and Rinehart may be referred to herein as the "Audit Committee Defendants." Collectively, defendants Denend, Henske, and Roche may be referred to herein as the "Compensation Committee Defendants." Collectively, defendants Bergeron, Bondy, Castle, Denend, Hart, Henske, Rinehart, and Roche may be referred to herein as the "Director Defendants." Collectively, defendants Adams, Angel, Atkinson, Bergeron, Waller, and Zwarenstein may be referred to herein as the "Officer Defendants."

- 6 -

1    Together, the Director Defendants and Officer Defendants may be referred to herein as the

2    "Individual Defendants," and together with VeriFone, "Defendants."

3    ### DUTIES OF THE INDIVIDUAL DEFENDANTS

4    21.    By reason of their positions as officers and/or directors of the Company and because

5    of their ability to control the business and corporate affairs of the Company, the Individual

6    Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust,

7    loyalty, and due care, and were and are required to use their utmost ability to control and manage

8    the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and are

9    required to act in furtherance of the best interests of the Company and its shareholders so as to

10   benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each

11   director and officer of the Company owes to the Company and its shareholders the fiduciary duty

12   to exercise good faith and diligence in the administration of the affairs of the Company and in the

13   use and preservation of its property and assets, and the highest obligations of fair dealing.

14   22.    To discharge their duties, the officers and directors of the Company were required to

15   exercise reasonable and prudent supervision over the management, policies, practices and controls

16   of the Company. By virtue of such duties, the officers and directors of the Company were required

17   to, among other things:

18   a.    Exercise good faith to ensure that the affairs of the Company were

19        conducted in an efficient, business-like manner so as to make it possible to
          provide the highest quality performance of its business;

20   b.    Exercise good faith to ensure that the Company was operated in a diligent,

21        honest and prudent manner and complied with the Company's by-laws and
          all applicable federal and state laws, rules, regulations and requirements,

22        including acting only within the scope of its legal authority;

23   c.    Exercise good faith to ensure that the Company's financial statements were
          prepared in accordance with Generally Accepted Accounting Principles

24        ("GAAP");

25   d.    Exercise good faith in supervising the preparation and filing of all financial
          statements and other financial information required by law, including

26        periodic financial statements and reports filed with the Securities and
          Exchange Commission ("SEC"), and in examining and evaluating the

27        financial statements and other information concerning the financial affairs of
          the Company;

28

- 7 -

e.   When placed on notice of improper or imprudent conduct by the Company and/or its employees, exercise good faith in taking action to correct the misconduct and prevent its recurrence; and

f.   Act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

23.    The Individual Defendants, particularly the Audit Committee Defendants Castle, Denend, Henske, and Rinehart, were responsible for maintaining and establishing adequate internal accounting controls for the Company and to ensure that the Company's financial statements were based on accurate financial information.  According to GAAP and SEC rules, to accomplish the objectives of accurately recording, processing, summarizing, and reporting financial data, a corporation must establish an internal accounting control structure.  Among other things, the Individual Defendants were required to:

a.   Make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and

b.   Devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that –

i.   transactions are executed in accordance with management's general or specific authorization; and

ii.   transactions are recorded as necessary to permit preparation of financial statements in conformity with [GAAP].

24.    VeriFone's Audit Committee Charter provides that the Audit Committee shall, among other things:

a.   meet to review and discuss the quarterly financial statements, including reviewing the Company's specific disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations," with management and the independent auditors prior to the filing of the Company's Quarterly Report on Form 10-Q. Also, the Committee shall discuss the results of the quarterly review and any other matters required to be communicated to the Committee by the independent auditors under generally accepted auditing standards;

b.   review and discuss the type and presentation of information to be included in earnings press releases, as well as financial information and earnings guidance provided to analysts and rating agencies; and

c.   discuss with management, the internal auditors, and the independent auditors the adequacy and effectiveness of internal control over financial reporting, including any significant deficiencies or material weaknesses identified by management of the Company in connection with its required quarterly

- 8 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT
1064377.1

certifications under Section 302 of the Sarbanes-Oxley Act which are reasonably likely to adversely affect the Company's ability to record, process, summarize and report financial information and as to the existence of any fraud, whether or not material, that involves management or other employees who have a significant role in the Company's internal control over financial reporting. In addition, the Committee shall discuss with management, the internal auditors, and the independent auditors any significant changes in internal control over financial reporting that are disclosed, or considered for disclosures, in the Company's periodic filings with the SEC.

25.    According to the Audit Committee Charter:

The Committee's review of the Company's financial statements and disclosures shall include: (i) major issues regarding accounting principles and financial statement presentations, including any significant changes in the company's selection or application of accounting principles, and major issues as to the adequacy of the company's internal controls and any specific remedial actions adopted in light of material control deficiencies; (ii) discussions with management and the independent auditors regarding significant financial reporting issues and judgments made in connection with the preparation of the financial statements and the reasonableness of those judgments, including analyses of the effects of alternative GAAP methods on the financial statements; (iii) consideration of the effect of regulatory accounting initiatives, as well as off-balance sheet structures on the financial statements; (iv) consideration of the judgment of both management and the independent auditors about the quality, not just the acceptability of accounting principles; and (v) the clarity of the disclosures in the financial statements. Also, the Committee shall discuss the results of the annual audit and any other matters required to be communicated to the Committee by the independent auditors under professional standards.

26.    VeriFone's Compensation Committee charter provides that the Compensation Committee is responsible for, among other things:

a.    Reviewing and approving corporate goals and objectives relevant to the compensation of VeriFone's Chief Executive Officer ("CEO"), evaluating the CEO's performance in light of those goals and objectives and, either as a committee or together with the other independent directors (as directed by the Board), determining and approving the CEO's compensation level based on this evaluation;

b.    Making recommendations to the Board with respect to non-CEO compensation, incentive-compensation plans and equity-based plans, including the VeriFone Bonus Plan and the 2006 Equity Incentive Plan, overseeing the activities of the individuals responsible for administering these plans, and discharging any responsibilities imposed on the Compensation Committee by any of these plans; and

c.    In consultation with management, overseeing regulatory compliance with respect to compensation matters, including overseeing VeriFone's policies on structuring compensation programs to preserve tax deductibility, and, as and when required, establishing performance goals and certifying that

- 9 -

performance goals have been attained for purposes of Section 162(m) of the Internal Revenue Code.

## FACTUAL ALLEGATIONS

### *The Company's False and Misleading Statements*

27.     Between March 9, 2007 and December 3, 2007, the Individual Defendants knew that the Company's internal financial controls were ineffective.   The Company's ineffective internal controls, and the Individual Defendants' failure to ensure their effectiveness, resulted in the Company materially overstating its financial results by failing to properly value its inventory and cost of net revenue.

28.     During this time period, the Individual Defendants knowingly caused the Company to make a series of false and misleading statements concerning the Company's financial condition, materially misrepresenting that the Company's financial condition was better than it actually was. Furthermore, VeriFone, through the Individual Defendants, made a series of false and misleading statements concerning the condition of the Company's internal controls, materially misrepresenting that the Company maintained sound internal controls and was able to regulate its business in accordance with applicable laws and regulations.   As a result of these materially false and misleading statements, the Individual Defendants falsely inflated the Company's stock price, even though the Individual Defendants knew that the information provided to the investing public was untruthful, and knew that their conduct was harmful to the Company.

29.     Defendants Bergeron, Castle, Denend, Hart, Henske, Rinehart, and Roche, as a result of their access to internal VeriFone documents and reports, conversations and discussions with other officers, directors, and employees of VeriFone, and attendance at executive, management, and Board meetings, and especially defendants Castle, Denend, Henske, and Rinehart, as Audit Committee Defendants responsible for meeting with management and the Company's independent auditors to discuss the Company's quarterly financial statements, knew that the statements discussed herein were materially false and misleading at the time that they were filed with the SEC and disseminated to the investing public.

30.    On December 18, 2006, the Company filed with the United States Securities and Exchange Commission ("SEC") its annual report on Form 10-K for the fiscal year ended October 31, 2006 (the "2006 10-K").

31.    According to the 2006 10-K, the Company reviews the adequacy of its inventories valuation on a quarterly basis:

> The valuation of inventories requires us to determine obsolete or excess inventory and inventory that is not of saleable quality. The determination of obsolete or excess inventories requires us to estimate the future demand for our products within specific time horizons, generally twelve months to eighteen months. If our demand forecast for specific products is greater than actual demand and we fail to reduce manufacturing output accordingly, we could be required to record additional inventories write-offs, which would have a negative impact on our gross profit percentage.

> We review the adequacy of our inventories valuation on a quarterly basis. For production inventory, our methodology involves matching our on-hand and on-order inventories with our sales estimate over the next twelve and eighteen months. We then evaluate the inventory found to be in excess of the twelve-month demand estimate and take appropriate write-downs to reflect the risk of obsolescence. For on-hand and on-order inventory in excess of eighteen month requirements we generally record a 100% reserve. This methodology is significantly affected by our sales estimate. If actual demand were to be substantially lower than estimated, additional inventories write-downs for excess or obsolete inventories may be required.

32.    On March 9, 2007, the Company filed with the SEC its quarterly report for the fiscal quarter ended January 31, 2007 (the "1Q07 10-Q"). In the 1Q07 10-Q, the Company stated that the Company had inventories assets valued at approximately $130,815,000 at the end of the fiscal quarter, and that the Company had incurred costs of net revenue equal to approximately $135,246,000 in the fiscal quarter. For the same fiscal quarter, the Company reported net income of -$984,000, and earnings per diluted share of -$0.01.

33.    Also in the 1Q07 10-Q, the review of which the Audit Committee was responsible for prior to filing with the SEC, the Company stated that VeriFone's disclosure controls and procedures were effective, and that there had been no changes in the Company's internal control over financial reporting for the quarter ended January 31, 2007:

> With the participation of our Chief Executive Officer and Chief Financial Officer, management has carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rule 13a-15(e) and 15d-15(f) under the Securities Exchange Act of 1934). Based upon that evaluation, our Chief Executive

- 11 -

Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of the end of the period covered by this report.

\* \* \*

There have been no other changes in our internal control over financial reporting that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting for the quarter ended January 31, 2007.

34.    On May 31, 2007, the Company filed with the SEC its quarterly report for the fiscal quarter ended April 30, 2007 (the "2Q07 10-Q"). In the 2Q07 10-Q, the Company stated that the Company had inventories assets valued at approximately $125,390,000 at the end of the fiscal quarter, and that the Company had incurred costs of net revenue equal to approximately $127,013,000 in the fiscal quarter, and $262,259,000 for the six months ended April 30, 2007. For the fiscal quarter and six months ended April 30, 2007, the Company reported net income of $4,859,000 and $3875,000, respectively, and earnings per diluted share of $0.06 and $0.05, respectively.

35.    Also in the 2Q07 10-Q, the review of which the Audit Committee was responsible for prior to filing with the SEC, the Company stated that VeriFone's disclosure controls and procedures were effective, and that there had been no changes in the Company's internal control over financial reporting for the quarter ended April 30, 2007:

With the participation of our Chief Executive Officer and Chief Financial Officer, management has carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rule 13a-15(e) and 15d-15(f) under the Securities Exchange Act of 1934). Based upon that evaluation, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of the end of the period covered by this report.

\* \* \*

No change in our internal control over financial reporting (as defined in Rule 13a-15(f) under the Securities and Exchange Act of 1934) occurred during the second quarter of our fiscal year ended April 30, 2007 that has materially affected, or is reasonably likely to affect, our internal control over financial reporting.

36.    On September 7, 2007, the Company filed with the SEC its quarterly report for the fiscal quarter ended July 31, 2007 (the "3Q07 10-Q"). In the 3Q07 10-Q, the Company stated that the Company had inventories assets valued at approximately $145,398,000 at the end of the fiscal quarter, and that the Company had incurred costs of net revenue equal to approximately $129,934,000 in the fiscal quarter, and $392,193,000 for the nine months ended July 31, 2007. For

- 12 -

1    the fiscal quarter and nine months ended July 31, 2007, the Company reported net income of

2    $13,439,000 and $17,314,000, respectively, and earnings per diluted share of $0.16 and $0.20,

3    respectively.

4         37.    Also in the 3Q07 10-Q, the review of which the Audit Committee was responsible

5    for prior to filing with the SEC, the Company stated that VeriFone's disclosure controls and

6    procedures were effective, and that there had been no changes in the Company's internal control

7    over financial reporting for the quarter ended July 31, 2007:

> With the participation of our Chief Executive Officer and Chief Financial Officer,
> management has carried out an evaluation of the effectiveness of our disclosure
> controls and procedures (as defined in Rule 13a-15(e) and 15d-15(f) under the
> Securities Exchange Act of 1934). Based upon that evaluation, our Chief Executive
> Officer and Chief Financial Officer concluded that our disclosure controls and
> procedures were effective as of the end of the period covered by this report.

* * *

> No change in our internal control over financial reporting (as defined in Rule 13a-
> 15(f) under the Securities and Exchange Act of 1934) occurred during the third
> quarter of our fiscal year ended July 31, 2007 that has materially affected, or is
> reasonably likely to affect, our internal control over financial reporting.

         38.    The foregoing statements were false and misleading when made because the

Individual Defendants failed to disclose that the Company's net income for the first, second, and

third fiscal quarters of 2007 was materially overstated because the Company materially overstated

reported inventories and materially understated cost of net revenues during those quarters.  The

Company reported that its first, second, and third quarter reported inventories were overstated by

$7.7 million, $16.5 million, and $30.02 million, respectively.  As a result, the Company's reported

pre-tax income was overstated by $8.9 million, $7.0 million, and $13.8 million for the first, second,

and third quarters, respectively.

### *The Company Admits to its False and Misleading Statements*

         39.    On December 3, 2007, the Company filed with the SEC a Form 8-K (the "8-K") in

which it announced that it "will restate its previously issued unaudited interim consolidated

financial statements for the three months ended January 31, 2007, the three and six months ended

April 30, 2007 and the three and nine months ended July 31, 2007."

- 13 -

40.     In the 8-K, the Company further disclosed that the financial statements for the quarters ended January 31, 2007, April 30, 2007, and July 31, 2007 should not be relied upon because the Company improperly and materially overstated in-transit inventory and allocation of manufacturing and distribution overhead to inventory, each of which caused the Company's costs of net revenues to be improperly and materially understated, and the Company's net income to be improperly and materially inflated. The Company further noted that it would delay the release of full financial results for the three months ended October 31, 2007 pending completion of the restatements.

> On December 2, 2007, following a review by and on the recommendation of management, the Company concluded that its unaudited interim consolidated financial statements for the three months ended January 31, 2007, the three and six months ended April 30, 2007 and the three and nine months ended July 31, 2007 should no longer be relied upon, principally due to errors in accounting related to the valuation of in-transit inventory and allocation of manufacturing and distribution overhead to inventory, each of which affects the Company's reported costs of net revenues. The restatements are anticipated to correct errors that overstated previously reported inventories in material amounts as of January 31, 2007, April 30, 2007 and July 31, 2007, and understated cost of net revenues in material amounts for the three month periods ended January 31, 2007, April 30, 2007, and July 31, 2007. Accordingly, investors are cautioned not to rely on the Company's historical financial statements and earnings press releases and similar communications for the periods ended January 31, 2007, April 30, 2007, and July 31, 2007.
>
> Based on its review to date, the Company's management currently anticipates that the restatement will result in reductions to previously reported inventories of approximately $7.7 million, $16.5 million and $30.2 million as of January 31, 2007, April 30, 2007 and July 31, 2007, respectively, and reductions to previously reported pre-tax income of approximately $8.9 million, $7.0 million and $13.8 million for the three month periods ended January 31, 2007, April 30, 2007 and July 31, 2007, respectively. The Company is currently evaluating the anticipated effect of the restatement on after-tax income for those periods.
>
> These estimates include corrections of other unrelated errors detected in the course of the Company's review to date, are based on currently available information and are subject to change during the course of the Company's restatement process. While the Company is not currently aware of other accounting errors requiring adjustment to any prior period financial statements, there can be no assurances that the Company or its independent registered public accounting firm will not find additional accounting errors requiring further adjustments in those or earlier periods.
>
> Also on December 2, 2007, the Company's management and the Audit Committee of its Board of Directors determined that the Company would delay the release of full fourth quarter 2007 financial results that were scheduled to be released on December 6, 2007, pending completion of the assessment of these errors and the restatements.

- 14 -

The Company concluded that a restatement of its interim unaudited financial statements is required as a result of an internal review of in-transit inventory balances conducted in preparation for the Company's fiscal 2007 audit. Upon completion of its assessment of these errors, the Company intends to file amended Quarterly Reports on Form 10-Q for the periods described above that will restate the previously issued financial statements included therein. The Company currently estimates that it will file these amended quarterly reports, together with its Annual Report on Form 10-K for the fiscal year ended October 31, 2007, in January 2008. However, the Company cannot be certain how much time will ultimately be required for it to complete the restatement process.

Although the Company's management is still evaluating the implications of the restatements described above on its internal control over financial reporting, when the Company files its Annual Report on Form 10-K for the year ended October 31, 2007 and amends the previously filed quarterly reports to effect the restatements, management expects the Company to report one or more material weaknesses in the Company's internal control over financial reporting.

The Company's management and the Audit Committee have discussed the matters disclosed in this Current Report on Form 8-K with Ernst & Young LLP, the Company's independent registered public accounting firm.

41.    The following table depicts the financial figures that will have to be restated, and the amount of such restatement, as a result of the Company's inadequate accounting and revenue recognition controls and procedures:

| Quarter | Previously Stated Inventories[1] | Amount of Reduction | % of Reduction | Previously Stated Pre-Tax Income | Amount of Reduction | % of Reduction |
|---|---|---|---|---|---|---|
| 1Q07 | $130,815 | $7,700 | 5.89% | $2,867 | $8,900 | 310.43% |
| 2Q07 | $125,390 | $16,500 | 13.16% | $9,351 | $7,000 | 74.86% |
| 3Q07 | $145,398 | $30,200 | 20.77% | $24,762 | $13,800 | 55.73% |

42.    On December 31, 2007, the Company filed with the SEC a Form NT 10-K in which it announced that its financial statements for the quarters ended January 31, 2007, April 30, 2007, and July 31, 2007 should not be relied upon due to errors in accounting related to the valuation of in-transit inventory and allocation of manufacturing and distribution overhead to inventory, each of which affects the Company's costs of net revenues. Accordingly, the Company announced that it would be unable to file its Annual Report on Form 10-K for the year ended October 31, 2007 in a timely manner.

VeriFone Holdings, Inc. ("VeriFone") is unable to file its Annual Report on Form 10-K for the year ended October 31, 2007 in a timely manner without unreasonable effort and expense in light of the circumstances described below.

[1] All dollar figures are in thousands unless otherwise stated.

- 15 -

On December 3, 2007, VeriFone announced that following a review by and on the recommendation of management, it has concluded that its unaudited interim consolidated financial statements for the three months ended January 31, 2007, the three and six months ended April 30, 2007, and the three and nine months ended July 31, 2007, should no longer be relied upon, principally due to errors in accounting related to the valuation of in-transit inventory and allocation of manufacturing and distribution overhead to inventory, each of which affects VeriFone's reported costs of net revenues. The restatements are anticipated to correct errors that overstated previously reported inventories in material amounts as of January 31, 2007, April 30, 2007, and July 31, 2007, and understated cost of net revenues in material amounts for the three month periods ended January 31, 2007, April 30, 2007, and July 31, 2007. Accordingly, investors are cautioned not to rely on VeriFone's historical financial statements and earnings press releases and similar communications for the periods ended January 31, 2007, April 30, 2007, and July 31, 2007. These restatements are also anticipated to correct other errors that may be detected in the course of VeriFone's review.

VeriFone concluded that a restatement of its interim unaudited financial statements is required as a result of an internal review of in-transit inventory balances conducted in preparation for VeriFone's fiscal 2007 audit.

VeriFone's management and the Audit Committee of its Board of Directors have determined to delay the filing of VeriFone's Annual Report on Form 10-K for the fiscal year ended October 31, 2007 pending completion of the assessment of the errors and the restatements described above. Upon completion of its assessment of these errors, VeriFone intends to file amended Quarterly Reports on Form 10-Q for the periods described above that will restate the previously issued financial statements included therein, following which time VeriFone expects to complete and file its Annual Report on Form 10-K for the fiscal year ended October 31, 2007.

### *Individual Defendants' Stock Sales Based Upon Material Non-Public Information*

43.    From March 9, 2007 – the day the 1Q07 10-Q was filed with the SEC – until November 30, 2007 – the last trading day of the Company's common stock before the Company announced that its prior financial statements could not be relied upon – the Company's common stock climbed from $37.01 per share to $48.03, an increase of more than 29%. The Company's common stock peaked in 2007 at $49.43 per share on October 31, 2007.

44.    This dramatic gain was caused as a direct result of the Individual Defendants' failure to recognize and correct the Company's internal control failures, and the deliberate overstatement of the Company's financial performance in the Company's Form 10-Qs.

45.    In breach of both their fiduciary duty of good faith and loyalty, the Individual Defendants willfully ignored the obvious and pervasive problems with VeriFone's accounting and

- 16 -

1    internal control practices and procedures and failed to make a good faith effort to correct the

2    problems or prevent their recurrence.

3        46.    The material non-public information discussed above was well known among

4    VeriFone insiders, including the Individual Defendants, who comprise the entire executive corps of

5    the Company and its entire Board, and was discussed formally and informally during VeriFone

6    Board and committee meetings, management meetings, and other meetings attended by the

7    Individual Defendants.

8        47.    In contravention of their fiduciary duties of good faith and loyalty, defendants

9    Adams, Angel, Atkinson, Bergeron, Bondy, Castle, Roche, Waller, and Zwarenstein, with the

10   knowledge that the Company's financial statements were false and materially misstated, sold more

11   than *$332 million worth* of Company stock in order to line their own pockets, and the pockets of

12   their affiliates.

13       48.    From March 1, 2007 until November 26, 2007, defendants Adams, Angel, Atkinson,

14   Bergeron, Bondy, Castle, Roche, Waller and Zwarenstein, based on their knowledge of material

15   non-public information regarding the Company, sold a total of 8,879,613 shares of VeriFone stock,

16   garnering total proceeds of over $332 million, as follows:[2]

17

| Name | Date of First Sale | Date of Last Sale | Total Shares Sold | Proceeds[3] |
|------|--------------------|-------------------|-------------------|-------------|
| Adams | 3/1/07 | 9/24/07 | 129,478 | $4,690,583 |
| Angel | 3/13/07 | 11/13/07 | 135,000 | $5,198,721 |
| Atkinson | 3/1/07 | 9/26/07 | 117,000 | $4,457,464 |
| Bergeron | 3/15/07 | 11/26/07 | 1,441,735 | $56,523,631 |
| Bondy | 6/25/07 | 9/13/07 | 6,800,000[4] | $251,208,000 |
| Castle | 9/14/07 | 9/14/07 | 4,500 | $176,404 |
| Roche | 6/25/07 | 9/13/07 | 6,800,000 | $251,208,000 |
| Waller | 6/13/07 | 11/26/07 | 90,000 | $3,530,605 |

[2] Each of the stock sales conducted by defendants Adams, Angel, Atkinson, Bergeron, Bondy, Castle, Roche, Waller, and Zwarenstein are demonstrated in Exhibit A hereto.

[3] Proceeds are rounded to the nearest whole dollar.

[4] During the relevant period, Bondy and Roche were affiliated with GTCR. Bondy and Roche both used material inside information concerning the financial condition of the Company to cause GTCR to sell 6,800,000 shares of Company common stock for proceeds in excess of $251 million. These shares and proceeds were not counted twice in calculating to total values in the table above.

- 17 -

| Name | Date of First Sale | Date of Last Sale | Total Shares Sold | Proceeds[3] |
|---|---|---|---|---|
| Zwarenstein | 3/15/07 | 11/13/07 | 161,900 | $6,228,286 |
| **TOTAL** | **3/1/07** | **11/26/07** | **8,879,613** | **$332,013,694** |

49.    At the time that the stock sales referenced in the above paragraph were made, defendants Adams, Angel, Atkinson, Bergeron, Bondy, Castle, Roche, Waller, and Zwarenstein each knew that the Company's financial statements were false and materially overstated, and that the Company's stock price was materially inflated as a result thereof.

50.    The stock sales described in paragraph 48 were not part of any normal or regular pattern or practice of such sales by the Individual Defendants, but rather were unusual in that the Individual Defendants sold large amounts of VeriFone stock prior to revealing the truth about the Company's internal control problems and materially overstated financial statements.

51.    Specifically, defendants Adams, Angel, Atkinson, Bergeron, Bondy, Roche, Waller, and Zwarenstein each sold significant portions of their VeriFone holdings between March 1, 2007 and November 26, 2007, as demonstrated by the following table:

| Name | Percentage of Holdings Sold |
|---|---|
| Adams | 72.00% |
| Angel | 57.42% |
| Atkinson | 45.14% |
| Bergeron | 40.61% |
| Bondy & Roche (through GTCR) | 41.32% |
| Waller | 67.75% |
| Zwarenstein | 41.54% |
| **TOTAL** | **41.85%** |

52.    Lastly, in order to present the appearance of propriety, many of the transactions in paragraph 48 above were conducted pursuant to Rule 10b5-1 Plans under the Securities Exchange Act.  However, defendants Adams, Bergeron, and Zwarenstein, who conducted certain of these transactions pursuant to purportedly proper 10b5-1 Plans, entered into these plans when they were in possession of material non-public information, thereby rendering the plans invalid.  Bergeron and Zwarenstein conducted their stock sales pursuant to 10b5-1 Plans that were entered into on

December 10, 2006, more than one month after the beginning of 1Q07, which was the subject of the first false and misleading statement, as alleged herein at paragraphs 32 and 33. Adams conducted his stock sales pursuant to a 10b5-1 Plan that was entered into on January 3, 2007, approximately two months after the beginning of 1Q07, which was the subject of the first false and misleading statement, as alleged herein at paragraphs 32 and 33.

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

53.    Plaintiff brings this action derivatively in the right and for the benefit of VeriFone to redress breaches of fiduciary duty and unjust enrichment of the Individual Defendants.

54.    Plaintiff will adequately and fairly represent the interests of VeriFone and its shareholders in enforcing and prosecuting its rights.

55.    Plaintiff is an owner of VeriFone common stock and was an owner of VeriFone common stock at all times relevant to the Individual Defendants' wrongful course of conduct alleged herein.

56.    At the time that this action was commenced, the VeriFone Board consisted of eight directors: defendants Bergeron, Castle, Denend, Hart, Henske, Rinehart, and Roche, and non-defendant Eitan Raff.

57.    As a result of the facts set forth herein, Plaintiff has not made any demand on the VeriFone Board to institute this action against the Individual Defendants. Such demand would be a futile and useless act with respect to the following director defendants because they are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action for the following reasons:

a.    Defendants Bergeron, Castle, and Roche, because all three of them face a substantial likelihood of being held liable for breaching their fiduciary duties of loyalty and good faith for engaging in illegal insider trading of VeriFone securities, as alleged herein, and therefore they are incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action;

b.    Defendants Castle, Denend, Henske, and Rinehart, because each of them knew of the Company's ongoing improper accounting and revenue recognition practices, yet still permitted the Company to portray to the investing public the Company's false and misleading financial condition despite their heightened fiduciary obligations as members of the Audit

- 19 -

Committee, and therefore are incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action;

c.  Defendants Bergeron, Castle, Denend, Hart, Henske, Rinehart, and Roche, because all seven of them knew of the Company's ongoing improper accounting and revenue recognition practices, and thus face a substantial likelihood of being held liable for breaching their fiduciary duties, and therefore are incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action;

d.  Defendants Denend, Henske, and Roche, because each of them knew of the Company's ongoing improper accounting and revenue recognition practices, yet, as members of the Compensation Committee, still permitted defendants Adams, Bergeron, and Zwarenstein to enter into 10b5-1 Plans in order to present the appearance of propriety when defendants Adams, Bergeron, and Zwarenstein conducted the transactions referred to in paragraph 48 herein, and therefore are incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action;

e.  Defendant Roche, because of his business relationship with defendant Bondy through GTCR, and because both defendant Roche and Bondy face a substantial likelihood of being held liable for breaching their fiduciary duties of loyalty and good faith for engaging in illegal insider trading of VeriFone securities, as alleged herein, and therefore Roche is incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action;

f.  Defendant Bergeron, because, according to the Company's Proxy statement, defendant Bergeron's compensation is set by the Compensation Committee. Thus, due to the fact that defendants Denend, Henske, and Roche directly control Bergeron's compensation by virtue of their roles as members of the Compensation Committee, Bergeron is incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action.

## COUNT I

### AGAINST ALL INDIVIDUAL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY OF GOOD FAITH IN CONNECTION WITH IMPROPER BUSINESS PRACTICES

58.  Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

59.  As alleged herein, each of the Individual Defendants had a fiduciary duty to, among other things, exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner, that the Company's financial statements were prepared in accordance with GAAP, and that the Company complied with all applicable federal and state laws, rules, regulations and requirements, and, when put on notice of problems with the Company's business practices and

- 20 -

operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

60.    As alleged herein, the Individual Defendants willfully ignored the obvious and pervasive problems with VeriFone's accounting, revenue recognition, and internal control practices and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence.    Despite their actual knowledge of the Company's improper business practices, including, but not limited to, failing to properly value the Company's inventory and cost of net revenues, thereby materially overstating VeriFone's financial results, and failing to prepare the Company's financial statements in accordance with GAAP, the Individual Defendants failed to make a good faith effort to correct the problems or prevent their recurrence.

61.    As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained damages, including, but not limited to, the costs and expenses incurred in connection with the restatement.

## COUNT II

### AGAINST DEFENDANTS ADAMS, ANGEL, ATKINSON, BERGERON, BONDY, CASTLE, ROCHE, WALLER, AND ZWARENSTEIN FOR BREACH OF FIDUCIARY DUTY OF LOYALTY AND GOOD FAITH IN CONNECTION WITH INSIDER STOCK SALES

62.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

63.    At the time of each of the stock sales set forth herein, each of defendants Adams, Angel, Atkinson, Bergeron, Bondy, Castle, Roche, Waller, and Zwarenstein knew, but did not disclose publicly, that the Company's financial results were false and misleading as a result of the Company's failure to comply with applicable accounting and revenue recognition procedures. Each of defendants Adams, Angel, Atkinson, Bergeron, Bondy, Castle, Roche, Waller, and Zwarenstein made each of the stock sales described herein on the basis of and because of their knowledge of the material non-public information described herein.

64.    At the time of their stock sales, each of defendants Adams, Angel, Atkinson, Bergeron, Bondy, Castle, Roche, Waller, and Zwarenstein knew that when it was disclosed that the

- 21 -

1    Company's financial results were false and misleading as a result of the Company's failure to

2    comply with applicable accounting and revenue recognition procedures, the price of the

3    Company's common stock would dramatically decrease. Defendants Adams, Angel, Atkinson,

4    Bergeron, Bondy, Castle, Roche, Waller, and Zwarenstein's sales of VeriFone common stock

5    based on their knowledge of this material non-public information was a breach of their fiduciary

6    duties of loyalty and good faith.

7          65.    Since the use of the Company's proprietary information for their own gain

8    constitutes a breach of defendants Adams, Angel, Atkinson, Bergeron, Bondy, Castle, Roche,

9    Waller, and Zwarenstein's fiduciary duties, the Company is entitled to the imposition of a

10   constructive trust on any proceeds defendants Adams, Angel, Atkinson, Bergeron, Bondy, Castle,

11   Roche, Waller, and Zwarenstein obtained thereby.

## COUNT III

### AGAINST DEFENDANTS ADAMS, ANGEL, ATKINSON, BERGERON, BONDY, CASTLE, ROCHE, WALLER, AND ZWARENSTEIN FOR UNJUST ENRICHMENT IN CONNECTION WITH INSIDER STOCK SALES

15         66.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as if

16   fully set forth herein.

17         67.    Defendants Adams, Angel, Atkinson, Bergeron, Bondy, Castle, Roche, Waller, and

18   Zwarenstein were unjustly enriched by their receipt of proceeds from their illegal sales of VeriFone

19   common stock, as alleged herein, and it would be unconscionable to allow them to retain the

20   benefits of their illegal conduct.

21         68.    To remedy defendants Adams, Angel, Atkinson, Bergeron, Bondy, Castle, Roche,

22   Waller, and Zwarenstein's unjust enrichment, the Court should order them to disgorge to the

23   Company all proceeds derived from their illegal sales of VeriFone common stock.

24         WHEREFORE, Plaintiff demands judgment as follows:

25   A.    Against all of the Individual Defendants and in favor of the Company for the
           amount of damages sustained by the Company as a result of the Individual
26         Defendants' breaches of fiduciary duties;

27   B.    Imposing a constructive trust in favor of the Company for the amount of proceeds
           each of defendants Adams, Angel, Atkinson, Bergeron, Bondy, Castle, Roche,
28         Waller, and Zwarenstein received from their sales of VeriFone common stock

- 22 -

alleged herein, in addition to all proceeds otherwise derived from their service as directors and/or executives of the Company;

C.  Ordering defendants Adams, Angel, Atkinson, Bergeron, Bondy, Castle, Roche, Waller, and Zwarenstein to disgorge to the Company all proceeds derived from their sales of VeriFone common stock alleged herein, in addition to all proceeds otherwise derived from their service as directors and/or executives of the Company;

D.  Granting appropriate equitable relief to remedy Defendants' breach of fiduciary duties.

E.  Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.  Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated: February 26, 2008            Respectfully submitted,

SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP

L. Timothy Fisher

Alan R. Plutzik, Of Counsel (Bar No. 077785)
L. Timothy Fisher, Of Counsel (Bar No. 191626)
Nichole Browning (Bar No. 251937)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
Telephone: (925) 945-0770
Facsimile: (925) 945-8792

-and-

Eric L. Zagar
James H. Miller
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Attorneys for Plaintiff*

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT
1064377.1